ROLLS–ROYCE, Inc., v. STIMSON,
Secretary of War.
Civil Action No. 24379.

District Court of the United States
for the District of Columbia.
June 29, 1944.

Charles F. Short, Jr., of Chicago, Ill., and Justin L. Edgerton, of Washington, D. C., for petitioner.

Francis M. Shea, Asst. Atty. Gen., Edward M. Curran, U. S. Atty., of Washington, D. C., Joseph A. Fanelli, Sp. Asst. to Atty. Gen., and A. Morris Kobrick, Atty., Department of Justice, of Washington, D. C., for respondent.

MORRIS, Justice.

This action was brought by the petitioner to prevent the Secretary of War, by a writ of prohibition, from doing certain acts under the authority of Title VII of the Revenue Act of 1943, 26 U.S.C.A. Int.Rev.Acts, or its antecedent legislation, Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as amended, 50 U.S.C.A. Appendix, § 1191, and to compel the Secretary of War, by a writ of manda-

mus, to cancel and vacate certain orders heretofore made pursuant to said legislation. This relief is sought upon the ground that such legislation is repugnant to the Constitution of the United States, particularly as it relates to the renegotiation of contracts executed prior to the enactment of the first act authorizing the renegotiation of contracts. Immediately after the filing of the petition in this case, the petitioner filed a motion asking for the same relief asked for in the petition and "for other and further relief as the nature of the case may require and as to the Court may seem proper to maintain the status quo between petitioner and respondent." Thereupon, the respondent filed a motion to dismiss the petition and opposed the granting of petitioner's motion. Upon these motions, a hearing was had.

■ While the process to secure the relief sought is denominated a writ of prohibition and a writ of mandamus, it is in effect no different from injunctive relief, and would be granted, if at all, only upon such considerations as would justify the granting of an injunction. So, at the threshold, although neither party has raised the question, I must determine whether or not this relief is interdicted unless there is compliance with the Act of Congress, approved August 24, 1937, 28 U.S.

C.A. § 380a.[1] It seems beyond question that the end sought to be attained by that Act of Congress would require its application to this action, and I fail to see how the employment of a different nomenclature in the denomination of the relief here sought, when in substance it is not different, can avoid the terms of the Act. I, therefore, reach the conclusion that it is my duty under that Act to request the Chief Justice of the United States Court of Appeals for the District of Columbia to designate two other judges, one of whom shall be a justice of that Court, to participate in the hearing and determination of the motions and other proceedings in this action.

■ It is insisted by the petitioner that, even in this view, I should treat the petitioner's motion for "such other and further relief * * * as to the Court may seem proper to maintain the status quo between petitioner and respondent" as an application for a temporary restraining order, and that such order should be granted to prevent irreparable loss or damage to the petitioner. I fully agree that the motion should so be treated, but I do not agree with the petitioner's contention that such temporary restraining order is needed to prevent irreparable loss or damage.

■ It is made to appear that demand has been made upon petitioner to attend a

1 "No interlocutory or permanent injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any Act of Congress upon the ground that such Act or any part thereof is repugnant to the Constitution of the United States shall be issued or granted by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, unless the application for the same shall be presented to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a circuit judge. When any such application is presented to a judge, he shall immediately request the senior circuit judge (or in his absence, the presiding circuit judge) of the circuit in which such district court is located to designate two other judges to participate in hearing and determining such application. It shall be the duty of the senior circuit judge or the presiding circuit judge, as the case may be, to designate immediately two other judges from such circuit for such purpose, and it shall be the duty of the judges so designated to participate in such hearing and determination. * * * Provided, That if of opinion that irreparable loss or damage would result to the petitioner unless a temporary restraining order is granted, the judge to whom the application is made may grant such temporary restraining order at any time before the hearing and determination of the application, but such temporary restraining order shall remain in force only until such hearing and determination upon notice as aforesaid, and such temporary restraining order shall contain a specific finding, based upon evidence submitted to the court making the order and identified by reference thereto, that such irreparable loss or damage would result to the petitioner and specifying the nature of the loss or damage. * * * An appeal may be taken directly to the Supreme Court of the United States upon application therefor or notice thereof within thirty days after the entry of the order, decree, or judgment granting or denying, after notice and hearing, an interlocutory or permanent injunction in such case. * * * (Aug. 24, 1937, c. 754, § 3, 50 Stat. 752.)"

hearing for the purpose of renegotiating certain contracts. The Act of Congress, the validity of which is here challenged, provides for review of such hearings and an appeal to the Tax Court of the United States, where the matter may be tried de novo. Surely no final action which can injure the petitioner can reasonably be anticipated before this cause can be considered by the three-judge court authorized to hear and determine the validity of the legislation.

█ It is alleged, however, that demand has been made upon petitioner for information of a confidential nature relating to its right to use the name Rolls-Royce, patents, copy rights, trade marks and other trade secrets, all of which, it is alleged, are wholly irrelevant to the question of petitioner's costs under its contracts and not germane to a determination of whether or not such contracts would result in excessive profits. Petitioner is correct in the assertion that the Act, the constitutionality of which is challenged, does require the furnishing by a contractor of a financial statement, setting forth information prescribed by regulations promulgated by the War Contracts Price Adjustment Board, and that such Act further provides:

"In addition to the statement required under the preceding sentence, every such contractor or subcontractor shall, at such time or times and in such form and detail as the Board may by regulations prescribe, furnish the Board any information, records, or data which is determined by the Board to be necessary to carry out this section. Any person who willfully fails or refuses to furnish any statement, information, records, or data required of them under this subsection, or who knowingly furnishes any such statement, information, records, or data containing information which is false or misleading in any material respect, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or imprisonment for not more than two years, or both."

It is the petitioner's contention that its refusal to comply with the demand for confidential information above referred to would subject it to criminal sanctions in the event the legislation is determined to be valid. Without in the slightest giving approval to any demand that a contractor submit confidential information irrelevant to the inquiry of excessive profits, I do not believe that the demand, if such, constitutes a threat of irreparable loss or damage. Surely criminal sanctions could not be invoked unless petitioner "willfully fails or refuses" to furnish information demanded. "Willful refusal," as used in its context here, has never meant a refusal in good faith for the purpose of having a legitimate dispute settled. If the petitioner in good faith wants a determination by a constitutional court of whether or not the demanded information should be furnished, the Act clearly gives him an opportunity to secure such determination. The Act provides in part:

"For the purposes of this section the Board shall have the same powers with respect to any such contractor or subcontractor that any agency designated by the President to exercise the powers conferred by Title XIII of the Second War Powers Act, 1942, has with respect to any contractor to whom such title is applicable."

Title XIII of the Second War Powers Act, 1942, Section 1303, 50 U.S.C.A. Appendix, § 643b, is set forth in the margin.[2]

---

[2] "In case of contempt by, or refusal to obey a subpœna issued to, any person, any agency acting hereunder, or the Chairman of the War Production Board, as the case may be, may invoke the aid of any court of the United States within the jurisdiction of which any investigation or proceeding under this title is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, records, or other documentary or physical evidence. And such court may issue an order requiring such person to give testimony or produce any books, records, or other documentary or physical evidence touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as contempt thereof. All process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he may be found. Any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry or to produce books, records, or other documentary or physical evidence, if in his power to do so, in obedience to the subpœna of any agency acting hereunder, or the Chairman of the War Production Board, as the case may be, shall be guilty of a misdemeanor, and, upon conviction, shall be subject to a fine of not more than $5,000, or to imprisonment for a term of not more than one year, or both."

It is thus, not only apparent that a method has been provided whereby it may be determined whether or not the confidential information in question should be furnished, but that the term "willfully refuse" is substantially the same as refusal without good cause. The petitioner faces no serious peril of having criminal sanctions invoked if he offers to furnish the information demanded, provided a court, upon a hearing to enforce a subpoena, determines that it should be furnished. It was doubtless to avoid the transgression of constitutional rights in this particular respect that the Congress made the provision which it did for the enforcement of subpoena of an administrative agency.

For the reasons stated, I conclude that a temporary restraining order should not be issued.